19527

Walter J. SUBER, Appellant, v. SOUTH CAROLINA STATE BOARD OF HEALTH and E. Kenneth Aycock, State Health Officer, Respondents.

(193 S. E. (2d) 520)

*Messrs. McEachin & McEachin, of Florence,* for *Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., and Walton J. McLeod, III,* of Columbia, *for Respondents,*

December 5, 1972.

Lewis, Justice:

This action involves the right of appellant, a duly licensed podiatrist, to registration by the respondent, State Board of Health, to dispense or prescribe any of the controlled drugs listed in Act No. 445, 1971 Acts of the General Assembly, 57 Stat. 800, now appearing as Section 32-1510.21 *et seq.* of the Supplement to the 1962 Code of Laws and commonly referred to as the South Carolina Controlled Substances Act.

Under the provisions of the foregoing Act, the General Assembly has provided for the control of certain drugs and substances which are considered dangerous, such as narcotics, barbiturates, etc. The State Board of Health is, by the terms of the Act, charged with the duty of administering the statutory requirements relative to the registration, regulation and policing of persons who manufacture, distribute or dispense the controlled drugs; and every person who

manufactures, distributes, or dispenses any such drugs is required to obtain a registration or permit from the Board to do so.

In the administration of the Act, there are six categories or schedules of controlled substances for which an authorized practitioner must be registered in order for him to lawfully prescribe them. These categories involve both narcotic and non-narcotic drugs. Schedule II includes the "hard narcotics," such morphine, demerol, etc. Schedule II(n) includes such drugs as amphetamine, ritalin, and preludin. Schedule III is also subdivided into narcotic and non-narcotic drugs. The narcotic, listed as Schedule III, consists of drugs containing codeine and the non-narcotic, listed as Schedule III(n), includes strong barbiturates, such as seconal and membutal. Schedule IV consists of barbiturates, such as phenobarbital, mebarol and equanil. Schedule V includes dasin (a cold preparation), codeine cough syrups, and anti-diarrhea preparations containing small amounts of opium.

Appellant, as a licensed podiatrist, applied to the State Board of Health for a permit to dispense and prescribe any of the foregoing controlled drugs. The Board refused to grant appellant the requested permit, but did authorize him to dispense or prescribe drugs in Schedule III (narcotic). This schedule consists of narcotic drugs containing codeine, which are essentially mild pain relievers or analgesics. Appellant then brought this declaratory judgment action seeking a determination that he should be granted a permit to dispense or prescribe any of the controlled drugs. The lower court sustained the Board's refusal to issue the license requested and this appeal followed.

Appellant contends that, as a licensed podiatrist, he is entitled, under the applicable statutes, to a permit to dispense all controlled drugs. The position of respondent, State Board of Healtlh, however, sustained by the lower court, is that the issuance of permits to dispense controlled drugs is dis-

cretionary with the Board and that the requested permit was denied in the exercise of a sound discretion.

The issue to be decided is, basically, whether appellant is entitled to a permit to dispense controlled drugs solely because he is a licensed podiatrist or whether the State Board of Health has the right, in the exercise of a sound discretion, to refuse such permit. The question of whether, if the issuance of the permit was discretionary, the Board improperly or illegally exercised that discretion is not in issue.

Podiatry is a very restricted medical field and is defined and regulated by statute. These statutes appear in Section 56-1543 *et seq.* of the 1962 Code of Laws and Code Supplement, as amended by Act No. 252 of the 1971 Acts of the General Assembly, 57 Stat. 288. Under these statutes, the practice of podiatry is limited to the diagnosis, medical and surgical treatment of local ailments of the human foot, provided, medical treatment is not permitted to extend to the treatment of any systemic disease causing manifestations in the foot; nor can surgical treatment extend to the amputation of the foot or toes. In administering medical treatment, the podiatrist may apply or prescribe "any therapeutic agent or remedy for the relief of foot ailments, except the medical treatment of any systemic disease causing manifestations in the foot."

Therefore, under the statutes regulating the practice, a podiatrist is authorized to prescribe therapeutic drugs for the relief of a local foot ailment.

In conferring authority upon the State Board of Health to issue permits to dispense or prescribe controlled drugs, the Controlled Substances Act, in Section 32-1510.42(c), provides that "practitioners shall be registered to dispense any controlled substances . . . in Schedules II through V if they are authorized to dispense . . . under the law of this State." A *practitioner* means, according to Section 32-1510.27, as amended by Act No. 1428 of the 1972 Acts of the General Assembly: "A physician, dentist, veterinarian,

*podiatrist,* scientific investigator, or other persons licensed, registered or otherwise permitted to distribute, dispense, conduct research with respect to or to administer a controlled substance in the course of professional practice or research in this State." (Emphasis added.)

Appellant argues that, since he is a licensed podiatrist and designated under the statute as a practitioner who "shall be registered to dispense any controlled substances," the Board is required to register him to dispense any of the controlled drugs. The Controlled Substances Act, however, contains other mandates which, when construed with the cited provisions, show a legislative intent that the issuance of a license to any applicant to dispense or prescribe controlled drugs is within the sound discretion of the State Board of Health.

The provision, relied upon by appellant, that practitioners listed shall be registered, is subject to the mandate of a prior subdivision of the Section (Code Supplement Section 32-1510.42(a). This subsection requires that the Board "shall register an applicant" only "if it determines that the issuance of such registration is consistent with the public interest." In determining the public interest, the section sets forth seven (7) factors which shall be considered by the Board, among them being:

\* \* \*

(2) Compliance with applicable State and Federal Law; and

\* \* \*

(6) Such other factors as may be relevant to and consistent with the public health and safety.

The duty and responsibility is thereby conferred upon the State Board of Health to determine whether the granting of the right to an applicant to dispense controlled substances or drugs is consistent with the public health and safety, and to deny such right if it is not so found. Therefore, regardless of the nature of the medical practi-

tioner, whether podiatrist or other he is entitled to a permit to dispense controlled drugs *only* if the Board determines that such is in the public interest.

We therefore hold that the Controlled Substances Act confers upon the State Board of Health the authority and duty to determine within the statutory guidelines whether or not a permit to dispense or prescribe drugs by an applicant would be consistent with the public interest. The exercise of such discretion, of course, is subject to proper judicial review, with which we are not here concerned.

Judgment affirmed.

Moss, C. J., and Bussey, Brailsford and Littlejohn, JJ., concur.